**BUCHER v BUCHER**

Ohio Appeals, 2nd Dist, Franklin Co

No 2726. Decided April 9, 1937

Arthur L. Rowe, Columbus, for appellant.

Weinland, Kahle, Atwood & Richards, Columbus, for appellee.

**OPINION**

By GEIGER, J.

Appellant complains of an order of the Court of Domestic Relations, of Franklin County. made July 30, 1936, wherein the monthly alimony theretofore ordered to be paid to her, in the sum of $175.00 per month, was reduced to $125.00 per month.

The claim is made that the court had no power to make this change, and further that the evidence adduced did not justify the change. The bill of exceptions discloses the testimony taken in the court below, and additional testimony was taken in this court.

A petition for divorce was filed by plaintiff, Harry Bucher, against his wife, Ethel M. Bucher, on March 10, 1925, said cause being numbered 101300. The defendant filed an answer and cross-petition for alimony. That cause came on to be heard in 1926. The court refused a decree to the plaintiff, and dismissed the petition, and made an allowance of $250.00 per month to the wife, for the support of a minor child. On February 8, 1933, Harry Bucher filed a second petition, seeking divorce from his wife. The defendant moved for the allowance of alimony for her support and the support of their minor child. The court, on April 25, 1933, found that the former order made in case No. 101300, for the payment of $250.00 per month is still

a binding order of the court, and that no alteration should now be made, and that said order is now undisturbed. The defendant wife then filed an answer and cross-petition, praying for a divorce, and temporary and permanent alimony, and money for the support of the child. On December 1, 1933, the court dismissed the petition of plaintiff, and allowed the divorce upon the cross-petition of defendant, Ethel M. Bucher with custody of the child awarded to the mother exclusively. It was further ordered that the plaintiff, Harry Bucher, pay to defendant "as and for her reasonable alimony in money the sum of $6,000.00, and that the plaintiff pay, until further order of the court, to the defendant, for the support of herself and child the sum of $175.00 per month, payable monthly. In the event of the death of the child said payments shall cease." It was further ordered that all unpaid amounts ordered to be paid to the defendant in this cause, or in cause numbered 101300 be vacated. On September 17, 1935, it was ordered that the plaintiff be cited for contempt, for failure to pay as formerly ordered. On November 18, 1935, the court overruled a motion by defendant for an order modifying the former order of the court, in respect to the monthly alimony; and on the same day found the defendant guilty of contempt. In these last two orders the position of the parties was evidently misstated, the plaintiff being designated as defendant, and the defendant as plaintiff. On July 30, 1936, the following order was made:

"This cause came on to be heard upon an affidavit in contempt filed by Ethel M. Bucher and a motion for modification of a former order and decree in the above case, for support, filed by Harry Bucher. Evidence was taken, both parties having appeared in court, and the matters were argued by counsel and submitted to the court.

"The court finds that the motion to modify was well taken and same is sustained and Harry Bucher is ordered to pay beginning August 1, 1936, the sum of One Hundred Twenty-five ($125.00) Dollars per month until further order of the court.

"The court finds the defendant guilty of contempt for failure to obey the former order of this court and orders that the defendant pay One Hundred Dollars ($100.00) in cash, forthwith to Arthur Rowe, the attorney for Ethel M. Bucher, and the balance of the delinquency is pass-

ed at present conditions until Harry Bucher is able to pay the same. Payments of alimony and support in the future are to be made to and through the Juvenile Court. To all of which Ethel M. Bucher excepts."

There is still the same confusion as to plaintiff and defendant.

It is asserted by appellant that alimony having been allowed in the entry of December 1, 1933, in the sum of $6,000.00, and payment for the support of the defendant and the minor child having been made in the sum of $175.00 per month, that this order for the monthly payments could not be modified, by the order of July 20, 1936, and it is further asserted that the record will disclose that the alimony provided by the order of December 1, 1933, was by agreement of the parties.

First examining the claim that there was an agreement as to the amount of alimony to be paid, we do not feel that the record sustains that claim. The bill of exceptions discloses the following questions and answers:

TESTIMONY OF MRS. BUCHER.

"Q. Tell the court whether or not the court passed on the question of alimony or support money that was due you or your child by reason of this divorce. A. Well, the court did not pass—I don't know.

Q. There was no bearing on the alimony question? A. No—I wasn't here.

Q. Was that agreed upon between the parties? A. Between the parties, the attorneys took care of it, I guess that is the way you do it, I don't know, I wasn't here. (P. 2).

Q. What did you understand you were to receive by the way of alimony or support money? A. $175.00 a month.

Q. That was for you and your child? A. That is the way I understood it. (p. 3).

Q. How much cash did you receive from Mr. Bucher after the divorce by way of permanent alimony? A $6,000.00. (pp. 5-6).

Q. And you accepted this $6,000.00 as full settlement of your interest in what he had in stocks, bonds or property or otherwise, didn't you? A. Yes." (P. 10).

TESTIMONY OF MR. BUCHER.

"Q. * * * In other words, at the time the settlement was made in December, 1933, after the $6,000.00 was paid to Mrs. Bucher, the attorneys had a complete statement of all holdings and all the interest? A. All of them.

Q. At that time did you believe you could continue to pay indefinitely $175.00 a month? A. I accepted it because it was a relief from the $250.00, which I was not able to meet right then and I thought I could because I thought I saw business getting better. (P. 14).

Q. And when this suit came on for divorce, you say that you and your attorneys agreed to $6,000.00 she should receive in cash? A. After looking over the holdings I had left.

Q. And $175.00 a month? A. A month.

Q. Agreed upon between all the parties? A. I said I would try to do that, I think I agreed to that, yes." (P. 21).

This is all the evidence given by the parties as to the agreement.

In the testimony taken in this court, Mr. Phil S. Bradford, who was counsel for plaintiff at the time the divorce was granted, testified:

"Q. Did you have any negotiations with Mr. Druggan, representing your client, regarding alimony? A. Oh, we had some negotiations.

Q. By Mr. Bucher, through you. First, were all the dealings in this matter between you attorneys or did the clients themselves deal directly, if you know? A. So far as I know the clients themselves did not deal directly, but all negotiations made back and forth were between Charles Sumner Druggan and myself. (p. 5-6)

Q. Was there any agreement by you with Mr. Druggan as the attorney for Harry Bucher wherein Mr. Bucher agreed to pay Mrs. Bucher $175.00 a month, if you know? A. There was no such agreement.

Q. What, if anything, if you did communicate to Mr. Druggan regarding the $175.00 a month or any amount of monthly payment alimony, what if anything was said by you to him? A. Well, I told him both in a letter and as I recall orally that Harry Bucher would not agree to pay $175.00 per month, but that if the court ordered it he would have to use his utmost efforts to try to obey the court's order. (P. 6).

(See also testimony on p. 8).

Q. I thought you said so far as permanent alimony was concerned you people had adjusted that at the sum of $6,000.00. A. Yes.

Q. That is permanent alimony. A. Yes, we did have an agreement on the $6,000.00.

Q. There was no contest either to the divorce or alimony on the day it was heard?

A. * * * but I do recall that the matter of the monthly payments thereafter was left to the discretion of the court, as I recall it.

Q. That is the best of your recollection. A. That is right.

Q. But the $6,000.00 was agreed on? A. Yes, that I am pretty sure was agreed upon. yes sir." (p. 10).

It appears to us that this testimony falls far short of proof that there was an agreement between the parties as to the monthly payments to be made by plaintiff, for the support of herself and the minor child. This is further emphasized by the repeated statements of the court in the several entries that as to the child's support, the monthly payments were to be paid **"until the further order of the court."** There is sufficient proof to indicate that there was an agreement as to the $6,000.00, but this was alimony to be paid to the wife.

THE LAW.

It is not necessary to go into detail as to the law of Ohio under the conditions disclosed.

**Corbett v Corbett, 123 Oh St 76:**

"A decree of divorce terminating the marriage contract of parents who have minor children, which decree provides for the custody, care and support of such minor or minors by the parents respectively during such minority or for a lesser period of time, named in the decree continues the jurisdiction of the court for such period without any express reservation in the decree itself. The proper practice in securing a modification of such decree with respect to the custody, care or support of such minors, is by motion filed in the original divorce action by the party seeking such modification."

Numerous authorities are cited in this opinion.

The case of **Josh v Josh, 120 Oh St 151,** involves questions quite similar to those raised in this case. At page 153 the court says:

"The claim of the plaintiff in error is that the trial court had no power to enter judgment for support until the child reached her majority, but could only order that the payments should continue until the child was sixteen years of age.

"* * * The decisions of courts of this state are numerous to the effect that, where in a case of this character an order is made

for the support of minor children, until the further order of the court, the case is one of continuing jurisdiction on the part of the trial court."

In the case of **Olney v Watts, 43 Oh St 499,** it is held:

"A party to a decree for alimony may, by an original petition and suit, obtain a modification of such former decree, upon proper allegations of the changed condition and circumstances of the parties."

The court quotes with approval **King v King, 38 Oh St 370,** to the effect that "the court may from time to time, on any change in the circumstances of the parties, increase or reduce the sum allotted for alimony, either temporary or permanent." The court says, in substance, at the bottom of page 508:

"If, however, it shall, in the further progress of the case, appear that the former decree, instead of being in the nature of alimony payable in installments for the support of the wife, was in the nature of a permanent division of the husband's property, and that the parties fixed the same by their own agreement, and the action of the court in the premises was simply an affirmance of the agreement by consent, this, if alleged and proved, may furnish a complete defense."

In the case of **Law v Law, 64 Oh St 369,** it is held that:

"A divorce being decreed for the aggression of the husband, and alimony being adjudged to the wife in accordance with an agreement of the parties, the terms of the decree as to alimony are not, if unaffected by fraud or mistake, subject to modification upon a petition filed by the former husband after the term at which the original decree was made."

This refers definitely to a case in which there was an agreement between the parties.

In the case of **Connolly v Connolly 16 Oh Ap 92,** it is held that:

"An allowance for support and maintenance of children is always subject to modification to conform with changed conditions."

In **Corbett v Corbett, 36 Oh Ap 321 (8 Abs 286),** it is held:

"Where parents agree upon the monthly payments which the husband shall make to the wife for support of their children, and such agreement is approved by the court and made a part of the decree granting a divorce, such order for support is subject to the continuing jurisdiction of the court, and may be modified after the term at which the decree was entered."

In **Campbell v Campbell, 46 Oh Ap 197 (14 Abs 481),** it is held that:

"Divorce decree incorporating amount for support of minor children agreed on in contract between parties may be subsequently modified by increasing allowance, where changed conditions make original amount inadequate. * * * Could not be reduced upon husband's motion to modify decree, since such action would impair obligation of contract."

We are not in entire harmony with the court's conclusion in that case. We do not believe the court's authority to modify the former order is limited to an increase of that order, but it is left to the discretion of the trial court to either increase or reduce the amount, as the best interests of the child may appear. This case involves an **agreement** of parties as to the allowance.

In the instant case the complaint is made that there was a reduction of $50.00 per month. It will be observed that there were numerous conflicts between the parties, in reference to the husband's failure to pay either the $250.00 allowance first made, or the reduced allowance of $175.00, and the husband was frequently held in contempt and ordered to be imprisoned unless he paid according to the order of the court.

It might well appear to the trial court that it would be much better for the welfare of the child, that the amount be so reduced that the husband could pay, without disgrace of contempt proceedings, rather than maintain it at the higher price where experience had shown that he would not pay.

We are in complete accord with the reasons given by Judge Lloyd in his dissenting opinion in this case. He states the matter so well that we refrain from commenting upon it.

Complaint is also made of the allowance of certain testimony, showing the condition of the plaintiff's circumstances, based upon monthly balance sheets. It is claimed that this is prejudicial error, whereby the defendant was prevented from showing that the statements made were not correct. At

the trial of the case there was not much concern about the allowance of the balance sheets in evidence.

The court said, on pages 36 and 37:

"Strictly speaking, I suppose it isn't admissible, but it will save a lot of time."

"It is just what Mr. Bucher, if given time, would testify to; I will admit it, it may not be strictly under the rule of evidence admissible, but it will save time."

Any one who has had experience in trial courts knows that in divorce cases many short cuts must be taken, otherwise, the time of the court would be exhausted in investigations of little or no consequence.

As to the testimony taken in this court, in reference to the plaintiff's supposed ownership of certain real estate, we do not think it would require a modification of the finding of the court below.

It must be remembered that the court below will have continuing jurisdiction of this case, and no doubt the plaintiff may at some future time file a motion to increase the allowance from $125.00 to some other sum. The Court of Domestic Relations is clearly the court in which these questions should be tried.

The case of **Stephenson v Stephenson, 54 Oh Ap 239,** (22 Abs 580) recently decided, has been examined and considered, and we do not think it conflicts with the above decision.

Judgment affirmed and cause remanded.

BARNES, PJ, and HORNBECK, J, concur.